*Read summary of agreement*

# MEMORANDUM OF AGREEMENT

Between the United States Department of Justice

and the

District of Columbia and

the District of Columbia Metropolitan Police Department,

June 13, 2001

## TABLE OF CONTENTS

I. **INTRODUCTION**

    A. **Background**

    B. **General Provisions**

    C. **Definitions**

II. **GENERAL USE OF FORCE POLICY REQUIREMENTS**

    A. **General Use of Force Policy**

    B. **Use of Firearms Policy**

    C. **Canine Policies and Procedures**

    D. **Oleoresin Capsicum Spray Policy**

    E. **Implementation Schedule**

III. **INCIDENT DOCUMENTATION, INVESTIGATION, AND REVIEW**

    A. **Use of Force Reporting Policy and Use of Force Incident Report**

    B. **Investigating Uses of Force and Misconduct Allegations**

        1. **Use of Force Investigations**

        2. **Investigations of Misconduct Allegations**

IV. **RECEIPT, INVESTIGATION, AND REVIEW OF MISCONDUCT ALLEGATIONS**

    A. **Coordination and Cooperation Between MPD and OCCR**

    B. Public Information and Outreach

    C. Receipt of Complaints

    D. OCCR Misconduct Investigations

    E. Evaluating and Resolving MPD Misconduct Allegations

V. DISCIPLINE AND NON-DISCIPLINARY ACTION

VI. PERSONNEL PERFORMANCE MANAGEMENT SYSTEM

    A. Performance Evaluation System

VII. TRAINING

    A. Management Oversight

    B. Curriculum

    C. Instructors

    D. Firearms Training

    E. Canine Training

VIII. SPECIALIZED MISSION UNITS

IX. PUBLIC INFORMATION

X. MONITORING, REPORTING, AND IMPLEMENTATION

    A. Independent Monitoring

    B. MPD Compliance Coordinator

    C. Reports and Records

    D. Implementation, Termination, and Enforcement

    E. Compliance

    F. Modifications

**MEMORANDUM OF AGREEMENT**

**Between the United States Department of Justice**

**and the**

District of Columbia and

the Washington Metropolitan Police Department,

**I. INTRODUCTION**

    **A. Background**

**1. In January 1999, District of Columbia Mayor Anthony A. Williams and Chief Charles H. Ramsey requested the Department of Justice to review all aspects of the Washington Metropolitan Police Department's use of force. This unprecedented request indicated the City and the Chief's commitment to minimizing the risk of excessive use of force in the Washington Metropolitan Police Department (MPD) and to promoting police integrity. Because of the unusual genesis of the investigation -- at the request of the agency to be investigated -- the Department of Justice agreed that, parallel with its pattern or practice investigation, it would provide MPD with technical assistance to correct identified deficiencies during the course of the investigation. The Department of Justice conducted the investigation requested by the City, and analyzed every reported use of force and citizen complaint alleging excessive use of force during the period from 1994 to through early 1999. The Department of Justice also examined MPD's policies, practices, and procedures related to use of force.**

**2. In addition to conducting an investigation, the Department of Justice has provided MPD with on-going technical assistance recommendations regarding its use of force policies and procedures, training, investigations, complaint handling, canine program, an early warning tracking system. Based upon these recommendations, MPD has begun to implement necessary reforms in the manner in which it investigates, monitors, and manages use of force issues.**

**3. The Department of Justice, the District of Columbia, and the District of Columbia Metropolitan Police Department, share a mutual interest in promoting effective and respectful policing. They join together in entering this agreement in order to minimize the risk of excessive use of force, to promote the use of the best available practices and procedures for police management, and to build upon recent improvements MPD has initiated to manage use of force issues. The parties acknowledge that additional reforms may be appropriate in order to identify and to prevent discriminatory law enforcement. The parties are currently reviewing officer communications on Mobile Data Terminals to identify unlawful or otherwise inappropriate conduct. Based upon the outcome of this review, MPD agrees to implement appropriate reforms.**

    **B. General Provisions**

**4. This agreement is effectuated pursuant to the authority granted DOJ under the Violent Crime Control and Law Enforcement Act of 1994 (42 U.S.C. §14141) to seek declaratory or equitable relief to remedy a pattern or practice of conduct by law enforcement officers that deprive individuals of rights, privileges or immunities secured by federal law.**

**5. Nothing in this Agreement is intended to alter the lawful authority of MPD police officers to use reasonable and necessary force, effect arrests and file charges, conduct searches or make seizures, or otherwise fulfill their law enforcement obligations to the people of the District of Columbia in a manner consistent with the requirements of the Constitution and laws of the United States and the District of Columbia.**

used unless resistance ends. The policy shall require that prior to discharging the OC spray, officers permit a reasonable period of time to allow compliance with the warning, when feasible.

50. The policy shall require officers to aim OC spray only at a person's face and upper torso. The policy shall require officers to utilize only two, one second bursts and to do so from at least 3 feet away from the subject, unless exceptional circumstances require otherwise. The policy shall require that, absent exceptional circumstances, officers shall decontaminate every sprayed subject with cool water or a decontamination solution within 20 minutes after the application of the spray. Officers shall transport sprayed subjects to the hospital for treatment when they complain of continued effects after having been contaminated, or they indicate that they have a pre-existing medical condition (e.g., asthma, emphysema, bronchitis, heart ailment, etc.) that may be aggravated by OC Spray. The policy shall prohibit officers from keeping any sprayed subject in a face down position, in order to avoid positional asphyxia.

    E. Implementation Schedule

51. MPD shall complete development of the policies and procedures referenced in this section within 30 days from the effective date of the agreement. In developing the final policies and procedures, MPD shall build upon the latest working drafts and correspondence exchanged between DOJ and MPD during the course of the investigation.

52. Prior to implementation of the policies and procedures referenced in this section, MPD shall submit them to DOJ for approval. In the event MPD revises any of the policies, procedures, or forms referenced in this section during the term of this agreement, it shall obtain approval from DOJ prior to implementation of the revised policy or form.

III. INCIDENT DOCUMENTATION, INVESTIGATION, AND REVIEW

    A. Use of Force Reporting Policy and Use of Force Incident Report

53. MPD shall complete development of a Use of Force Reporting policy and Use of Force Incident Report. The policy shall require officers to notify their supervisor immediately following any use of force or receipt of an allegation of excessive use of force and to complete a Use of Force Incident Report. Additionally, the policy shall require officers to complete a Use of Force Incident Report immediately following the drawing of and pointing of a firearm at, or in the direction of, another person. The policy shall require supervisors, upon notification of a use of force or allegation of excessive force, to respond to the scene. In every incident involving deadly force, as defined by paragraph 15, a serious use of force, as defined by paragraph 33, or any use of force indicating potential criminal conduct by an officer, as defined by paragraph 35, the supervisor shall ensure that the Force Investigation Team (FIT) is immediately notified.

54. MPD shall notify the Office of the United States Attorney for the District of Columbia (USAO) immediately, in no case later than the next business day, following a deadly use of force or a serious use of force by an MPD officer or following any use of force indicating potential criminal conduct by an officer.

55. Data captured on the reports described above in paragraph 53 shall be entered into MPD's Personnel Performance Management System (PPMS). Hard copies of these reports shall be maintained centrally by the Office of Professional Responsibility.

B. Investigating Uses of Force and Misconduct Allegations

1. Use of Force Investigations

56. MPD created the Force Investigation Team (FIT) to conduct fair, impartial and professional reviews of firearm discharges. The provisions in this section build upon the investigative techniques employed by FIT and expand FIT's role within MPD.

57. Within 60 days from the effective date of this Agreement, MPD shall fully implement its plan, subject to approval of DOJ, to reallocate responsibility for MPD criminal investigations of officer use of force from District Violent Crime Unit supervisors or other District supervisors to the Force Investigation Team (FIT). The plan shall include procedures to address the rights and responsibilities of officers and supervisors in carrying out their duties, including the preparation of both preliminary investigative files and complete investigative files.

58. MPD shall consult with the USAO regarding the investigation of an incident involving deadly force, a serious use of force, or any other force indicating potential criminal misconduct by an officer. If the USAO indicates a desire to proceed criminally based on the on-going consultations with MPD, or MPD requests criminal prosecutions in these incidents, any compelled interview of the subject officers shall be delayed, as described in paragraph 60. However, in order to ensure the collection of all relevant information, all other aspects of the investigation shall proceed. The USAO shall respond to a written request by MPD for charges, declination, or prosecutorial opinion within three business days, by either filing charges, providing a letter of declination, or indicating the USAO's intention to continue further criminal investigation.

59. In every incident involving deadly force, a serious use of force, or any use of force indicating potential criminal misconduct by an officer, the USAO shall notify and consult with the Chief of Police or the appropriate OPR official whenever possible, unless doing so would compromise the investigation, or is otherwise prohibited by law, rule, or regulation.

60. MPD and the USAO jointly acknowledge the need to continue consultation throughout the course of an investigation; and recognize the investigative process may ultimately proceed to an administrative conclusion and/or criminal charges. MPD agrees that it will not compel or order a subject officer to make a statement if the USAO has not yet issued a written criminal declination, for all incidents subject to the notice and consultation provisions described in paragraphs 58 and 59.

61. FIT shall respond to the scene of every incident involving deadly force, a serious use of force, or any use of force indicating potential criminal misconduct by an officer. In each of these incidents, FIT shall conduct the investigation of the use of force. That investigation may result in criminal charges, administrative action or both. Investigators from the involved officers' District shall not conduct the investigation. Based upon its review of use of force incidents from throughout MPD, FIT shall forward policy and training recommendations to the Chief of Police or his designee.

62. FIT shall complete its administrative use of force investigations within 90 days from the criminal declination described in paragraph 60, absent special circumstances which must be documented, and shall continue to conduct investigations in accordance with paragraphs 81 and 82, below. At the conclusion of each use of force investigation, the investigator shall prepare a report on the investigation, which shall be made a part of the investigation file. The report shall

include a description of the use of force incident and any other uses of force identified during the course of the investigation; a summary and analysis of all relevant evidence gathered during the investigation; and proposed findings and analysis supporting the findings. The proposed findings shall include the following: 1) a determination of whether the use of force is consistent MPD policy and training; 2) a determination of whether proper tactics were employed; and 3) a determination whether lesser force alternatives were reasonably available.

**63.** Within 120 days from the effective date of this Agreement, MPD shall train and assign a sufficient number of personnel to FIT to fulfill the requirements of this Agreement.

**64.** Chain of command district supervisors may investigate all use of force incidents except for those incidents involving a serious use of force, serious physical injury, or any use of force indicating potential criminal conduct by an officer. At the discretion of the Chief of Police or designee, any incident that may be investigated by chain of command district supervisors may be assigned for investigation to FIT or to chain of command supervisors from a district other that the district in which the incident occurred. No supervisor who was involved in the incident shall be responsible for the investigation of the incident.

**65.** Chain of command use of force investigations shall be completed within 90 days following the use of force incident, absent special circumstances which must be documented, and shall be conducted in accordance with paragraphs 81 and 82, below. At the conclusion of each use of force investigation, the investigator shall prepare a report on the investigation, which shall be made a part of the investigation file. The report shall include a description of the use of force incident and any other uses of force identified during the course of the investigation; a summary and analysis of all relevant evidence gathered during the investigation; and proposed findings and analysis supporting the proposed findings. The proposed findings shall include the following: 1) a determination of whether the use of force is consistent and MPD policy and training; 2) a determination of whether proper tactics were employed; and 3) a determination whether lesser force alternatives were reasonably available.

**66.** Upon completion of a chain of command use of force investigation, the investigator shall forward the investigation to the Unit Commander, who shall review the investigation to ensure that it is complete and that the findings are supported by the evidence. The Unit Commander shall order additional investigation when necessary. When the Unit Commander determines the investigation is complete and the findings are supported by the evidence, the investigation file shall be forwarded to the Use of Force Review Board (UFRB). Whenever there is evidence of criminal wrongdoing, the Unit Commander shall suspend the investigation immediately and notify FIT and the USAO.

**67.** Within 60 days from the effective date of this Agreement, MPD shall complete the development and implementation of a policy to enhance the UFRB, subject to approval by DOJ. The policy shall require the UFRB to conduct timely reviews of all use of force investigations. The policy shall set forth the membership of the UFRB and establish timelines for UFRB review of use of force investigations. The policy shall authorize the UFRB to recommend discipline for violations of MPD's policies and training. The policy shall authorize the UFRB to direct District supervisors to take non-disciplinary action to enable or encourage an officer to modify his or her performance . The policy shall require the UFRB to act as a quality control mechanism for all use of force investigations, with the responsibility to assign to FIT, or return to the investigating unit, all incomplete or mishandled use of force investigations. The policy shall provide the UFRB the authority and responsibility to recommend to the Chief of Police, or his designee, investigative protocols and standards for all force investigations. The policy shall require the UFRB to conduct

**annual reviews of all use of force cases examined to detect patterns/problems and to issue a report to the Chief of Police with findings and recommendations.**

        **2. Investigations of Misconduct Allegations**

**68. The Office of Professional Responsibility shall be responsible for the investigation of allegations of criminal misconduct set forth in the categories in paragraph 72, (a) through (i) below. Within 60 days from the date of this Agreement, MPD shall develop a plan, subject to approval of DOJ, to allocate sufficient personnel and establish procedures to accomplish this new responsibility.**

**69. MPD shall notify the USAO immediately, in no case later than the next business day, following the receipt or discovery of any allegations of criminal misconduct referred to in paragraphs 72 and 73. In every incident involving allegations of criminal misconduct referred to in paragraphs 72 and 73, the USAO shall notify and consult with the Chief of Police or the appropriate OPR official whenever possible, unless doing so would compromise the investigation, or is otherwise prohibited by law, rule, or regulation.**

**70. MPD shall consult with the USAO regarding the investigation of an incident involving allegations of criminal misconduct in the categories of matters described in paragraphs 72 and 73. If the USAO indicates a desire to proceed criminally based on the on-going consultations with MPD, or MPD requests criminal prosecutions in these incidents, any compelled interview of the subject officers shall be delayed, as described in paragraph 71. However, in order to ensure the collection of all relevant information, all other aspects of the investigation shall proceed. The USAO shall respond to a written request by MPD for charges, declination, or prosecutorial opinion within three business days, by either filing charges, providing a letter of declination, or indicating the USAO's intention to continue further criminal investigation.**

**71. MPD and the USAO jointly acknowledge the need to continue consultation throughout the course of an investigation; and recognize the investigative process may ultimately proceed to an administrative conclusion and/or criminal charges. MPD agrees that it will not compel or order a subject officer to make a statement if the USAO has not yet issued a written criminal declination, for all incidents involving allegations of criminal misconduct in the categories of matters described in paragraphs 72 and 73.**

**72. Within 60 days from the date of this Agreement, MPD shall develop a plan, subject to approval of DOJ, to reallocate responsibility for MPD administrative complaint investigations of misconduct complaints from chain-of-command District supervisors to OPR with respect to the following:**

    **a. all referrals pursuant to paragraphs 76 and 77;**

    **b. all civil suits alleging any misconduct by an officer while acting in an official capacity;**

    **c. all civil suits against an officer for off-duty conduct (while not acting in an official capacity) that alleges physical violence, threats of physical violence, or racial bias;**

    **d. all criminal arrests of or filing of criminal charges against an officer;**

> e. all allegations of unlawful discrimination (e.g., on the basis of race, ethnicity, gender, religion, national origin, sexual orientation, or disability), including improper ethnic remarks and gender bias, but excluding employment discrimination;
>
> f. all allegations of unlawful search and stops;
>
> g. all allegations of unlawful seizure (including false imprisonment and false arrest);
>
> h. any act of retaliation or retribution against an officer or person; and
>
> i. all allegations of strikes, blows, kicks, or other similar uses of force against a compliant subject or administered with a punitive purpose; and
>
> j. OPR shall assign for investigation outside of the District Chain of Command all allegations of misconduct related to the types of misconduct covered by "a" to i" of this paragraph; and

OPR shall assign to FIT all allegations of excessive force by an officer involving a use of deadly force, as defined in paragraph 15, a serious use of force, as defined in paragraph 33, or any use of force indicating potential criminal conduct by an officer, as defined in paragraph 35.

73. OPR, shall also assign for administrative investigation outside of the District chain of command the following:

> a. all incidents in which both (i) a person is charged by an officer with assault on a police officer, resisting arrest, or disorderly conduct, and (ii) the prosecutor's office notifies MPD either that it is dismissing the charge based upon officer credibility or a judge dismissed the charge based upon officer credibility;
>
> b. all incidents in which MPD has received written notification from a prosecuting agency in a criminal case that there has been (i) an order suppressing evidence because of any constitutional violation involving potential misconduct by an MPD officer, or (ii) any other judicial finding of officer misconduct made in the course of a judicial proceeding or any request by a federal or District of Columbia judge or magistrate that a misconduct investigation be initiated pursuant to some information developed during a judicial proceeding before a judge or magistrate. MPD shall request that all prosecuting agencies provide them with written notification whenever the prosecuting agency has determined that any of the above has occurred.

74. All administrative investigations of misconduct allegations conducted pursuant to paragraphs 72 and 73 shall be completed within 90 days from MPD receiving the complaint, or within 90 days from the criminal declination described in paragraph 71, where applicable, absent special circumstances which must be documented. At the conclusion of each such investigation, the investigator shall prepare a report on the investigation, which shall be made a part of the investigation file. The report shall include a description of the misconduct incident and any other misconduct identified during the course of the investigation; a summary and analysis of all relevant evidence gathered during the investigation; and proposed findings and analysis supporting the findings.

75. The Corporation Counsel's Office shall notify OPR whenever a person files a civil claim

**against the City alleging misconduct by an officer or other employee of MPD.**

**76. MPD shall continue to require all officers promptly to notify MPD of the following: the officer is arrested or criminally charged for any conduct; the officer is named as a party in any civil suit involving his or her conduct while on duty (or otherwise while acting in an official capacity); or the officer is named as a party in any civil suit regarding off-duty conduct (while not acting in an official capacity) that alleges any of the following: physical violence, threats of physical violence, racial bias, dishonesty, or fraud by the officer. Officers shall report this information either directly to OPR or to a supervisor who shall report the information to OPR.**

**77. MPD shall require officers to report to MPD without delay: any conduct by other officers that reasonably appears to constitute (a) an excessive use of force or improper threat of force; (b) a false arrest or filing of false charges; (c) an unlawful search or seizure; (d) unlawful discrimination; (e) an intentional failure to complete use of force reports required by MPD policies and in accordance with procedures; (f) an act of retaliation for complying with any MPD policy or procedure; or (g) an intentional provision of false information in an MPD or OCCR investigation or in any official report, log, or electronic transmittal of information. Officers shall report such alleged misconduct by fellow officers either directly to OPR or to a supervisor who shall report the information to OPR. This requirement applies to all officers, including supervisors and managers who learn of evidence of possible misconduct through their review of an officer's work. Failure to voluntarily report as described in this paragraph shall be an offense subject to discipline if sustained.**

**78. The City shall in fiscal year 2002 provide all necessary funds to fully implement paragraphs 68 and 74. Misconduct investigation responsibilities shall be transitioned as positions are filled. Prior to positions being filled, investigation responsibilities shall be transitioned commensurate with available resources. Positions shall be filled and investigation responsibility transition shall be completed by December 31, 2002.**

**79. OPR shall continue to review all misconduct complaints as they are received. OPR shall determine whether a misconduct complaint meets the criteria (set forth in paragraphs 72 and 73) for being assigned for investigation outside of the District Chain of Command.**

**80. MPD shall prohibit any officer who has a potential conflict of interest related to a pending misconduct investigation from participating in any way in the conduct or review of that investigation.**

**81. In conducting administrative misconduct investigations (whether conducted by FIT, Chain of Command, or OPR, following a criminal declination, where applicable) MPD shall, subject to and in conformance with applicable law, at a minimum:**

> **a. tape record or videotape interviews of complainants, involved officers, and material witnesses in investigations involving a serious use of force or serious physical injury (if a complainant or non-officer witness refuses to be tape-recorded or videotaped, then MPD shall prepare a written narrative of the statement to be signed by the complainant or non-officer witness);**

> **b. whenever practicable and appropriate, interview complainants and witnesses at sites and times convenient for them, including at their residences or places of business;**

   c. prohibit group interviews;

   d. notify the supervisors of the involved officers of the investigation, as appropriate;

   e. interview all appropriate MPD officers, including supervisors;

   f. collect, preserve, and analyze all appropriate evidence, including canvassing the scene to locate witnesses and obtaining complainant medical records, where appropriate; and

   g. identify and report in writing all inconsistencies in officer and witness interview statements gathered during the investigation.

82. In conducting misconduct investigations, MPD shall continue to assess the propriety of all officer conduct during the incident in which the alleged misconduct occurred. If during the course of an investigation the investigator has reason to believe that misconduct occurred other than that alleged, the investigator also shall investigate the additional potential misconduct to its logical conclusion.

83. Within 120 days from the effective date of this Agreement, MPD shall develop a manual, subject to approval by DOJ, for conducting all MPD misconduct investigations. The manual shall include timelines and shall provide investigative templates to assist investigators in gathering evidence, conducting witness interviews, and preparing investigative reports.

84. Within 90 days from the effective date of this Agreement, MPD shall develop a plan, subject to approval by DOJ, to ensure that all MPD investigators (whether conducting use of force investigations or misconduct investigations) receive adequate training to enable them to carry out their duties. All MPD investigators shall receive training and re-training in MPD policies and procedures, including, but not limited to, use of force and use of force reporting, canine deployment, transporting individuals in custody, restraints, arrests, report writing; investigative and interview techniques, including examining and interrogating witnesses, and collecting and preserving evidence; cultural sensitivity; ethics; integrity; and professionalism. MPD shall provide specialized training to investigators who conduct shooting investigations. The training shall occur within 180 days of the approval of the plan.

IV. RECEIPT, INVESTIGATION, AND REVIEW OF MISCONDUCT ALLEGATIONS

   A. Coordination and Cooperation Between MPD and OCCR

85. Within 60 days from the effective date of this Agreement, the City and MPD shall develop a written plan, in timely consultation with DOJ, that clearly delineates the roles and responsibilities of OCCR and MPD regarding the receipt, investigation, and review of complaints. At minimum, the plan shall specify each agency's responsibility for receiving, recording, investigating, and tracking complaints; each agency's responsibility for conducting community outreach and education regarding complaints; how, when, and in what fashion the agencies shall exchange information, including complaint referrals and information about sustained complaints; and the role and responsibilities of MPD official serving on the Citizen Complaint Review Board (CCRB).

86. The City shall provide OCCR sufficient qualified staff, funds, and resources to perform the functions required by this Agreement and by District of Columbia Law 12-208 creating OCCR,

>    iv. that it expressly identified in the annual fiscal year adopted budget prepared for Congressional use such obligation (not necessarily to include reference to this Agreement as such) together with the amount of money tied to performing such obligation; and
>
>    v. that Congress acted expressly to eliminate such amount of money or to reduce it below the level necessary to perform the obligation, or that Congress made an across the board reduction in the appropriation of MPD, OCCR, or any other agency with specific obligations under this Agreement as shown in the Council's budget act without expressly saving such obligation and the across the board reduction, as applied proportionately to the amount of money shown in the adopted budget for such obligation left an insufficient amount to carry out that obligation.
>
> b. The Mayor and MPD shall make diligent efforts to safeguard all appropriated funds available to meet obligations under this Agreement from re-programming.
>
> E. Compliance

**192.** This Agreement is a public document and shall be posted on the websites of the City or MPD and of the Special Litigation Section of the Civil Rights Division of DOJ.

**193.** The City and MPD agree that they shall not retaliate against any person because that person has filed or may file a complaint, provided information or assistance, or participated in any other manner in an investigation or proceeding relating to this Agreement.

> F. Modifications

**194.** The Parties may jointly agree, in writing, to modify this Agreement.

**For the United States Department of Justice:**

_____
**WILLIAM R. YEOMANS**
**Acting Assistant Attorney General**
**Civil Rights Division**


_____
**STEVEN H. ROSENBAUM**
**Chief**
**Special Litigation Section**
**Civil Rights Division**


_____
**SHANETTA Y. BROWN CUTLAR**
**Special Counsel**
**Special Litigation Section**
**Civil Rights Division**
**U.S. Department of Justice**
**P.O. Box 66400**

Washington, D.C. 20035-6400
202-514-0195

DATED: June 13, 2001

**For the District of Columbia and the Metropolitan Police Department:**

_____
**ANTHONY WILLIAMS**
Mayor of the District of Columbia

_____
**CHARLES H. RAMSEY**
Chief of Police
District of Columbia Metropolitan Police Department

_____
**TERRANCE W. GAINER**
Executive Assistant Chief of Police
District of Columbia Metropolitan Police Department

_____
**ROBERT RIGSBY**
Corporation Counsel
Office of the Corporation Counsel
441 4th Street, NW, Suite 1060N
Washington, D.C. 20001

**Approved as to form and legal sufficiency**

*Return to the Civil Rights Division Home Page*