TERRELL N. ROBERTS, III
(MD, D.C., VA)
DOUGLAS J. WOOD
(MD, D.C.)
CHRISTOPHER A. GRIFFITHS
(MD, D.C.)
NIKKI LOTZE
(MD, D.C.)
MATTHEW F. DAVIES
(MD, D.C.)

ATTORNEYS AT LAW
6801 KENILWORTH AVENUE
BERKSHIRE BUILDING, SUITE 202
RIVERDALE, MARYLAND 20737

(301) 699-0764
(301) 699-8706 FAX

August 31, 2007

VIA FAX 202 727 3625 AND REGULAR MAIL

Office of the Attorney General
Attn: Carl J. Schifferle
441 Fourth Street, N.W.
Washington, D.C. 20001

Re: Nathaniel Howard v. District of Columbia, et al
Case No. 06-2739

Dear Mr. Schifferle:

Enclosed is a report of Dr. Montague Blundon dated August 21, 2007, and reports of today's date from Lee R. Mintz, a vocational rehabilitation expert and Richard Lurito, an economist. Thank you.

Very truly yours,

Terrell N. Roberts, III

Enclosures

### MONTAGUE BLUNDON, III, M.D., P.A.
PRACTICE LIMITED TO ORTHOPAEDIC SURGERY
WYNGATE MEDICAL PARK
5640 Shields Drive
Bethesda Maryland 20817

---

301-897-5505

August 21, 2007

Terrell Roberts, M.D.
6801 Kenilworth AvenueBerkshire Building, Suite 202
Riverdale, MD 20737

RE: Nathaniel Howard

Dear Dr. Roberts:

Thank you very much for your kind referral of Nathaniel Howard. Enclosed is a copy of the office notes from his initial consultation.

As you know, we have been treating Nathaniel Howard for the injuries that he sustained to his right arm from the injury of January 30, 2006.

Mr. Howard has reached maximum medical improvement and we did not anticipate any new physician medical or surgical care including physical therapy, but he still requires office consultation and medical treatment due to the continued spasms and pain radiating throughout his arm. He is seen approximately once every 2 months with a cost of approximately $355 6 times a year.

1.  He still needs his medication to help control the pain rated at 7 out of 10, burning in nature and we prescribed Percocet 10/325 mg, #120, approximately every 2 months.
2.  As I expect, the patient's pain and tenderness to continue into the future and I feel that he will continue the needs of medication into the indefinite future all as the result of the injury from January 31, 2006. He did not have any pain or spasms in his right arm and all the pain and spasms are direct result of this injury.
3.  We prescribed physical therapy during the course of this treatment and all of his physical therapy was indicated and appropriate and totally necessary for the

(Continued)

Nathaniel Howard                                                          Page Two

treatment from the injury to his right humerus from the injury of January 31, 2006.

Yours sincerely,

*M. Blundon M.D.*

M. Blundon, M.D.

MB/cbs

Encl: Office notes

**RL** INC.

Financial and Economic Consulting

Richard J. Lurito, Ph.D.
*President*

August 31, 2007

Terrell N. Roberts, III, Esq.
Roberts & Wood
6801 Kenilworth Avenue
Suite 202
Riverdale, MD 20737

Re: Nathaniel A. Howard Case

Dear Mr. Roberts:

The purpose of this report is to set out a preliminary view of the economic loss suffered by Mr. Nathaniel A. Howard due to the injuries he sustained on January 31, 2006 which, according to Ms. Lee Mintz, a rehabilitation counselor, have rendered him unemployable.

At the time he was injured, Mr. Howard was about 5 months past his 37th birthday, having been born on August 14, 1968. According to the 2003 Life Tables, published by the U.S. Department of Health and Human Services, a black male, age 37, has 35.6 years of remaining life expectancy. U.S. Department of Labor data indicate that the worklife expectancy of a male, age 37, is 23.1 more years.[1] Hence, Mr. Howard could have expected to work until age 60.5.

According to Ms. Mintz, Mr. Howard's last employment was as a security worker at Cuco's Nightclub in the Washington, D.C. area. He was paid $12.00 an hour and worked 40 hours a week in the evening. Hence, he was earning $24,960 a year when he was injured ($12.00 x 2,080 hours). Ms. Mintz opined that this figure represents Mr. Howard's earning capacity had he not been injured.

Based on a 3% per year increase in pay, which is about equal to the likely rate of future inflation, Table 1, Column 2, shows that absent injury Mr. Howard could have expected to earn $814,950 in total dollars over his working life. Based on a 4.25% after-tax discount (interest) rate, the adjusted total of Column 3 of Table 1 shows that the present value of Mr. Howard's future earnings absent injury totals $528,520.

Had Mr. Howard earned the income set out in Column 2 of Table 1, he would have had to pay federal and District of Columbia income taxes on it. At a 3% inflation factor, Mr. Howard

---

[1] "Worklife Estimates: Effects of Race and Education", U.S. Department of Labor, Bureau of Labor Statistics, Bulletin 2254, February, 1986, Table A-1.

1491 Chain Bridge Road, Suite 300
McLean, VA 22101

Telephone: 703/442-4529
Telecopier: 703/893-1674

would have earned $25,709 on average over his working life in 2007 dollars. Had he taken the standard deduction and one exemption, he would have paid $2,211 in federal income taxes.[1] He would have paid $1,189 in District of Columbia income taxes.[2] His total tax liability would have been $3,400, or 13.2% of his average earnings ($3,400/$25,709).

It will be recalled that absent injury Mr. Howard would likely have earned $528,520 in income in present value terms over his working life. Had he paid 13.2% of this amount for income taxes he would have paid $69,765 (13.2% of $528,520). Therefore, because Mr. Howard has likely been rendered unemployable due to injury, he has likely lost $458,755 in earnings in present value terms as a result thereof ($528,520 - $69,765).

According to Dr. Montague Blundon, an orthopedist, Mr. Howard requires doctor visits every two months for the remainder of his life. Dr. Blundon indicated that the current cost per visit is $355. Therefore, the annual cost is $2,130 ($355 x 6 visits). Based on a 4.5% per year increase in the cost of the doctor visits and a 4.25% discount rate, it was determined that the present value cost of Mr. Howard's medical need is $74,899 over the 33.8 years of expected life he currently has remaining.

In sum, Mr. Howard has suffered at least two types of economic loss due to injury. They are as follows:

|   | Aspect Of Loss | Pecuniary Loss |
|---|---|---|
| 1. | Lost Net Income | $458,755 |
| 2. | Future Care Costs | 74,899 |
| 3. | Total | $533,654 |

Therefore, in my opinion, it is necessary to make a lump-sum payment of at least $533,654 to Mr. Howard today to compensate him for the pecuniary loss he has suffered. It should be noted however, that this loss figure does not include any medical and medical-related costs that Mr. Howard has incurred to date due to injury, nor does it include all of the medical costs, such as medications cost, that he may have to incur in the future.

Very truly yours,

Richard J. Lurito

Richard J. Lurito, Ph.D.

---

[1] $25,709 - $5,150 - $3,300 = $17,259 taxable income; tax is $2,211.
[2] $25,709 - $5,150 - $1,370 = $19,189 taxable income; tax is $500 + 7.5% over $10,000.

TABLE 1

Future Earnings Of Mr. Nathaniel A. Howard

Over His Working Life, Absent Injury

And The Present Value Of Those Earnings

| Year Of Remaining Work Life Expectancy a/ (1) | Future Earnings, Absent Injury (2) | Present Value Of Future Earnings d/ (3) |
|---|---|---|
| 1 | $ 24,960 b/ | $ 27,127 |
| 2 | 25,709 | 26,801 |
| 3 | 26,480 | 26,480 |
| 4 | 27,274 | 26,163 |
| 5 | 28,093 | 25,849 |
| 6 | 28,935 | 25,539 |
| 7 | 29,804 | 25,233 |
| 8 | 30,698 | 24,930 |
| 9 | 31,619 | 24,631 |
| 10 | 32,567 | 24,336 |
| 11 | 33,544 | 24,044 |
| 12 | 34,550 | 23,756 |
| 13 | 35,587 | 23,471 |
| 14 | 36,655 | 23,190 |
| 15 | 37,754 | 22,911 |
| 16 | 38,887 | 22,637 |
| 17 | 40,053 | 22,365 |
| 18 | 41,255 | 22,097 |
| 19 | 42,493 | 21,832 |
| 20 | 43,768 | 21,570 |
| 21 | 45,081 | 21,312 |
| 22 | 46,433 | 21,056 |
| 23 | 47,826 | 20,804 |
| 24 | 4,926 c/ | 2,055 |
| Total: | $ 814,950 | $ 550,189 |
| Adjusted Total: | | $ 528,520 e/ |

---

a/ At the time his economic loss began, Mr. Howard had an expected working life of 23.1 more years.
b/ From 2/1/2006 to 1/31/2007 Mr. Howard would likely have earned $24,960 (per text). This $24,960 figure is escalated at 3% per year into the future.
c/ 10% of $49,261.
d/ The figures in Column 2 discounted at 4.25% per year.
e/ $550,189/1.041.

# MINTZ & ASSOCIATES _____

_____ **VOCATIONAL CONSULTING**

TO:
Terrell N. Roberts, III, Esquire
6801 Kenilworth Avenue
Suite 202
Riverdale, Maryland 20737

DATE: 8/31/07
CASE: Nathaniel A. Howard v.
      District of Columbia
      Metropolitan Police, et al

FROM: Lee R. Mintz, M.Ed., CRC, CDMS, CCM, ABDA

### EMPLOYABILITY ASSESSMENT

The case of Nathaniel A. Howard v. District of Columbia Metropolitan Police, et al, was referred to
Mintz & Associates in order to determine the employability and earning capacity of Nathaniel A.
Howard. This Consultant interviewed Mr. Howard.

#### MEDICAL

Mr. Howard sustained an injury to his right arm (a complex fracture of the mid shaft humerus) on
1/31/06 during a D.C. police involved incident. He was initially treated at Washington Hospital Center
where he was x-rayed and treated. He was initially seen on 2/9/06 by Dr. Montague Blundon, III,
Orthopaedic Surgeon, and seen again on 3/17/06. On 3/24/06, Mr. Howard underwent an open
reduction and internal fixation using the Synthes IM nail, performed by Dr. Blundon, after x-rays
discussed at the 3/17/06 appointment revealed that the fracture was not healing and there was
approximately 35 degrees of angulation at the fracture site.

Per Dr. Blundon's notes of 5/23/07, re the surgical procedure "unfortunately it has never gone on to a
good union". Dr. Blundon reports that Mr. Howard has spasms and pain radiating thought his arm and
his range of motion is decreased by 40% with a 40% loss of strength, function and endurance.

Dr. Blundon states, "At this point, he has reached maximum medical improvement, but he still has
spasms and pain, both with bending and lifting and also with range of motion." "He does not have
evidence of good union and I do not feel he will ever have a strong union of the bone fragments, but it
is reinforced with the titanium intramedullary rod." "We will continue with conservative treatment,
gradual strengthening, and range of motion."

Per Dr. Blundon, "Based on the criteria of the American Medical Association using the Guide for
Evaluation of Permanent Impairment, fifth edition, and taking into consideration pain, tenderness, loss
of strength, loss of function, and loss of endurance, he has a 40% permanent partial impairment of his
right arm from the injury of January 31, 2006. All of his injury is a direct result of this accident and all
his treatment is a direct result of this accident. He did not have any preexisting condition or subsequent
injury. He is only able to do sedentary type work, but from a functional point of view, he is totally
disabled with respect to work."

-2-

Mr. Howard indicates that he continues under the care of Dr. Blundon and is scheduled for a 9/19/07 appointment. He has undergone physical therapy and has been using an EBI Bone Stimulator on his arm, ten hours daily. Mr. Howard indicates difficulty getting comfortable to sleep and takes Percocet at night when needed. He also reports a lot of pain in the arm on a constant basis but particularly with trying to lift or move the arm. He indicates the arm and hand stiffens and he has difficulty lifting anything that isn't very light as well as the inability to reach up or out. He has not driven since the accident as he can not move his dominant right arm to steer a car safely.

## SOCIAL/EDUCATIONAL /VOCATIONAL

Mr. Howard is 39 years old (DOB 8/14/68). He is 6'2" and weighs approximately 270 pounds. He is right hand dominant. Mr. Howard lives in Southeast Washington, D.C., with his mother and pays for $100 a month rent out of the $250 a month "IDA", temporary benefits through Social Security that he receives, noting that this is currently his only source of income. Mr. Howard is separated and has five children ages 6-19.

Mr. Howard dropped out of Springall Lake High School in D.C. in the 10th grade. He attended a Job Corps program in bricklaying and worked for one year in that field, in Reston, VA. His work history includes working security as a Bouncer at Cuco's night club in the D.C. area from 2005-2006, earning $12.00/hour, reportedly five nights a week, eight hours a night. From 2002-2004 he worked part-time, 20 hours a week earning $15.00/hour for Chimes, Inc. as a Janitor, cleaning and buffing floors at the Department of the Interior. From 2000-2002 he worked full-time as a Tow Truck Operator for Jim Good Towing Company earning $10.00/hour. In the late 1990's he worked full-time for Accustaff Temporary Agency earning $7.00/hour as a Warehouse Worker, in Jessup, loading food into crates and on to trucks. Additionally during the late 1990's he was self-employed with two other people doing construction work including demolition, carpentry, putting up drywall and painting. From the late 1980's into the 1990's, for approximately seven years he worked for his step-father doing janitorial work for Herbert's Cleaning Company.

## CONCLUSION

Mr. Nathaniel A. Howard is a 39 year old man whose right, dominant arm was injured in a D.C. police involved incident on 1/31/06. He underwent an open reduction and internal fixation using the Synthes IM nail on 3/24/06, performed by Dr. Montague Blundon. According to Dr. Blundon "It has never gone on to good union". Dr. Blundon reports that Mr. Howard is "only able to do sedentary type work, but from a functional point of view, he is totally disabled with respect to work." Mr. Howard is at MMI but continues under the care of Dr. Blundon and continues to use an EBI Bone Stimulator.

This Vocational Consultant would concur with Dr. Blundon's statement that Mr. Howard "is totally disabled with respect to work." Mr. Howard only completed the 10th grade (has no degree or GED) and has worked in strictly physical jobs over his lifetime. He has worked as a Bouncer, Janitor, Tow Truck Operator, Warehouseman, and Construction Worker. He has no transferable skills to sedentary work and has no clerical or computer skills. He is unable to use his right dominant arm to lift or reach or drive due to ongoing pain and limited range of motion.

-3-

This Vocational Consultant would concur with Dr. Blundon's statement that Mr. Howard "is totally disabled with respect to work." Mr. Howard only completed the 10th grade (has no degree or GED) and has worked in strictly physical jobs over his lifetime. He has worked as a Bouncer, Janitor, Tow Truck Operator, Warehouseman, and Construction Worker. He has no transferable skills to sedentary work and has no clerical or computer skills. He is unable to use his right dominant arm to lift or reach or drive due to ongoing pain and limited range of motion.

It is therefore, the opinion of this Vocational Consultant, within a reasonable degree of vocational certainty, and probability that Mr. Nathaniel Howard, due to the injury of 1/31/06 is totally disabled with respect to work. As Mr. Howard reports, at the time of his injury, he was earning $12.00/hour, 40 hours per week as a Bouncer at Cuco's, his loss of earning capacity would be $12.00/hour on a full-time basis. Should any further information be received in the future that might change the my opinion, I reserve the right to amend this report.

*Lee R. Mintz*

Lee R. Mintz, M.Ed., CRC, CDMS, CCM, ABDA
Vocational Consultant (MCRSP #G0299)